19 F.3d 1434
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Willard BOLTON, Defendant-Appellant.
 No. 93-5533.
 United States Court of Appeals, Sixth Circuit.
 March 15, 1994.
 
 Before: KENNEDY and GUY, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant James Willard Bolton appeals his conviction for using and carrying a firearm in relation to a drug trafficking crime, a violation of 18 U.S.C. Sec. 924(c)(1). Defendant argues that there was insufficient evidence to support his conviction. He also claims error in the admission of testimony of a state police officer, regarding round-nosed and hydro-shock ammunition found with the firearm at issue. For the reasons that follow, we affirm.
 
 I.
 
 2
 Illinois and Kentucky state police officers contacted defendant to set up an undercover purchase of marijuana from defendant to take place at the Days Inn in Corbin, Kentucky. On October 4, 1992, defendant arrived at the Days Inn, as pre-arranged, in his Chevrolet pick-up truck. Undercover Kentucky state police ("KSP") officer Doyle Wilson, playing the part of the purported buyer, greeted Bolton and the two entered a motel room where they negotiated the sale price of $19,200 for the marijuana. Subsequently, co-defendant Vernon Lee Dye drove into the rear of the motel parking lot in a Buick sedan, pulling next to Bolton's truck. Bolton and Wilson emerged from the room and joined Dye in opening the trunk of the Buick, where the marijuana was located.
 
 
 3
 After Wilson saw the marijuana in the trunk, he gave a signal and several KSP officers converged on Bolton and Dye to place them under arrest. The officers confiscated eight and one half pounds of marijuana from the trunk of the Buick; a Desert Eagle .44 Magnum pistol, found on the front seat of Bolton's truck, which was loaded with a bullet in its chamber and a clip containing hydro-shock bullets; an extra clip of hollow-point ammunition, found next to the .44 Magnum; and a Colt .45 semi-automatic pistol loaded with round-nose ammunition found under the driver's seat of the Buick.
 
 
 4
 Defendant and Dye were charged in a four-count indictment. Count I charged both with conspiracy to possess with intent to distribute marijuana. Count II charged both with possession with intent to distribute, distribution of marijuana and aiding and abetting the same. Count III charged defendant, aided and abetted by Dye, with using and carrying a firearm during and in relation to a drug trafficking crime. Count IV charged Dye, aided and abetted by defendant, with using and carrying a firearm during and in relation to a drug trafficking crime.
 
 
 5
 Defendant and Dye pled guilty to Count II. The court subsequently granted the United States' motion to dismiss Count I. Defendant filed a Motion in Limine to prohibit the introduction of evidence concerning the type of ammunition found with the .44 Magnum; this motion was denied. Defendant and Dye went to trial on Counts III and IV, respectively[1]. At the close of the United States' case-in-chief and at the close of all of the evidence, defendant moved for a judgment of acquittal; both motions were denied. The jury found defendant guilty of Count III and acquitted Dye of Count IV. Defendant timely appealed.
 
 II.
 A.
 
 6
 At trial, the United States proffered the testimony of KSP officer Harold Bargo. Bargo participated in the undercover operation that resulted in defendant's arrest. Bargo observed the firearms found in the Buick and the truck, handled them and successfully test fired them. There were three types of ammunition retrieved from the scene: round-nosed, hollow point and hydro-shock. Bargo testified as to the varying capabilities for destruction and violence of these different types of ammunition. Defendant objected to this testimony on the grounds that Bargo had not been qualified as a ballistics expert. The United States stated that it had not gone into his qualifications at length because it had not anticipated any objection to Bargo's testimony. The court stated that it would allow "this general kind of testimony ... provided [the United States] qualify [its] expert...." Joint App. at 78.
 
 
 7
 The United States established that Bargo had been a Kentucky State Trooper for 24 years, Joint App. at 72, and an officer in the Kentucky State Guard for 23 years, Id. at 75. As to his experience with various types of ammunition, Bargo testified on direct:
 
 
 8
 A. Through both military and State Police, for years, we fooled around with a lot of different types of ammunition. And the military side of the house, the round-nosed bullet has always been the standard. And we've test fired. That's all that an officer is allowed to carry is a .45. I've been an officer since '76 and have been armed with a .45 in that capacity.
 
 
 9
 ....
 
 
 10
 Q. Have you also had any experience in the test firing of hollow-point and hydro-shock ammunition and the resultant damage or effect that those bullets have?
 
 
 11
 A. I've had some experience with the hollow point, but not that much experience in actual firing of the hydro-shocks.
 
 
 12
 ....
 
 
 13
 Q. You say you've not had that much experience in the test firing of the hydro-shock ammunition. Do you have any knowledge of the design or purpose and the effect of the hydro-shock ammunition based upon your training and experience, other than State Police or in the military?
 
 
 14
 A. Mainly the State Police. The hydro-shock, it goes a little step further on the hollow point.
 
 
 15
 ....
 
 
 16
 Q. ... Just based on your training, then, what the effect of [the hydro-shock] bullet striking something will do?
 
 
 17
 A. Once the bullet--the projectile brings it in and the bullet starts exploding, then a ballistics test on that bullet is near impossible, because it's going to be fragmented so much after it explodes.
 
 
 18
 Joint App. at 79-81 (emphasis added).
 
 
 19
 Bargo's testimony demonstrates that his knowledge about different types of ammunition arose from his military and police training and experience. Under Federal Rule of Evidence 702, which governs the admission of expert testimony, a person may qualify as an expert based upon that person's knowledge, experience or training. The District Court did not stop Bargo's testimony after it stated that it would allow his testimony only if the government properly qualified him as an expert, we therefore infer that the court found Bargo to be so qualified. Defendant argues that the District Court erred in admitting Bargo's testimony over his objection.
 
 
 20
 We review a District Court's decision to qualify a witness as an expert and its decision to admit expert testimony under a highly deferential standard. Can-Am Engineering Co. v. Henderson Glass, Inc., 814 F.2d 253, 255 (6th Cir.1987) (the decision to qualify an individual as an expert will not be reversed absent a clear abuse); Apponi v. Sunshine Biscuits, Inc., 809 F.2d 1210, 1218 (6th Cir.) (decision to admit expert testimony will be sustained unless manifestly erroneous), cert. denied, 484 U.S. 820 (1987). "[T]he only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth." Mannino v. International Mfg. Co., 650 F.2d 846, 851 (6th Cir.1981).
 
 
 21
 We have not required that an expert possess knowledge of the entire relevant field, rather, we have required that the expert's knowledge of the subject matter be sufficiently complete so that his opinion will likely assist the trier of fact. Mannino, 650 F.2d at 851; see also Carlson Equip. Co. v. International Harvester Co., 710 F.2d 481, 484 (8th Cir.1983). We have also held that police officers may testify as to criminal methods and techniques because "[k]nowledge of such activity is generally 'beyond the understanding of the average layman.' " United States v. Pearce, 912 F.2d 159, 163 (6th Cir.1990) (quoting United States v. Espinosa, 827 F.2d 604, 611 (9th Cir.1987), cert. denied, 485 U.S. 968 (1988)), cert. denied, 498 U.S. 1093 (1991).
 
 
 22
 We hold that the District Court did not abuse its discretion in qualifying Bargo as an expert or in admitting his testimony. Bargo possessed sufficient specialized knowledge, acquired through his training and experience with different types of ammunition, to assist the trier of fact in understanding the types of ammunition found at the scene of the arrest.
 
 B.
 
 23
 In a related argument, defendant argues that evidence of the different types of ammunition found to be in his possession is irrelevant to the firearm charge. This argument is easily disposed of: that the firearms were loaded and that the .44 Magnum contained lethal ammunition, which has the capacity to maim and kill, is relevant to whether defendant was carrying the firearm "in relation to" his admitted possession of marijuana. The testimony tends to rebut any argument that defendant was carrying the firearm for sporting or recreational purposes and demonstrates its effectiveness if used against persons who might interfere with the drug transaction.
 
 
 24
 In the alternative, defendant argues that even if the testimony is relevant, its prejudicial effect outweighs its probative value, and should have been excluded under Federal Rule of Evidence 403. Defendant argues that both the United States and the court conceded this point when both stated that the testimony was prejudicial. However, these statements acknowledge that the evidence is prejudicial to defendant in the same way a confession is prejudicial to a defendant's claim of innocence. The court stated: "I think with regard to the type [of] ammunition, I think that this is relevant, that it is prejudicial and it's meant to be. I don't think it's unduly prejudicial." Joint App. at 40-41.
 
 
 25
 We will not disturb a district court's ruling on the issue of relevancy or its weighing of the probative value of evidence against undue prejudice absent an abuse of discretion. Hamling v. United States, 418 U.S. 87, 124-25 (1974). Finding no abuse of discretion, we affirm the District Court's judgment.
 
 C.
 
 26
 Defendant next argues that the District Court erred in denying his motions for judgment of acquittal because there is insufficient evidence to sustain his firearm conviction. We find this argument to be without merit. "A defendant claiming 'insufficiency of the evidence bears a very heavy burden.' On review, all evidence must be construed in a manner most favorable to the government. Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.) (quoting United States v. Soto, 716 F.2d 989, 991 (2d Cir.1983)) (citation omitted), cert. denied, 476 U.S. 1123 (1986).
 
 Section 924(c)(1) provides:
 
 27
 Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....
 
 
 28
 18 U.S.C. Sec. 924(c)(1).
 
 
 29
 "This Court has held that the words 'uses' and 'carries' in the statute 'should be construed broadly to cover the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions.' " United States v. Blankenship, 954 F.2d 1224, 1229 (6th Cir.) (quoting United States v. Acosta-Cazares, 878 F.2d 945, 952 (6th Cir.), cert. denied, 493 U.S. 899 (1989)), cert. denied, 113 S.Ct. 288 (1992). A successful showing that a firearm was used in relation to a drug trafficking crime does not require that the weapon be brandished or displayed.
 
 
 30
 A conviction under section 924(c)(1) will withstand appellate review
 
 
 31
 if the possessor of a weapon intended to have it available for possible use during or immediately following the transaction, or if it facilitated the transaction by lending courage to the possessor. The defendant's sole purpose in the carrying of the weapon need not have been facilitation of the drug trafficking crime.
 
 
 32
 [United States v.] Payero, 888 F.2d [928,] 929 [ (1st Cir.1989) ]....
 
 
 33
 United States v. Brown, 915 F.2d 219, 226 (6th Cir.1990). Upon review of the record, we find that there was ample evidence from which the jury could conclude that defendant kept the loaded gun on the front seat of his truck to facilitate the drug transaction, by either emboldening him or by providing protection for defendant and the large amount of money he was anticipating receiving.
 
 III.
 
 34
 Accordingly, the judgment of the District Court is AFFIRMED.
 
 
 
 [1]
 The court granted the defendants' motion to dismiss the aiding and abetting charges in Counts III and IV